**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
|                            ) | |
| **UNITED STATES**    ) | |
|                    ) | |
| **v.**         ) | |
|                 ) | **Case No. 24-mj-325-IDD-MSN** |
| **GOKHAN GUN,**    ) | |
|             ) | |
| **Defendant.**    ) | |
|               ) | |

**DEFENDANT'S OPPOSITION TO**
**GOVERNMENT'S MOTION TO REVOKE RELEASE ORDER**

**INTRODUCTION**

Gokhan Gun, by and through undersigned counsel, respectfully moves this Honorable

Court pursuant to 18 U.S.C. §§ 3142 and 1345, to affirm the decision releasing him pending trial

in this matter, in accordance with the release conditions ordered by United States Magistrate

Judge Ivan D. Davis on August 13, 2024. *See* Case No. 24-mj-325, Dkt. No. 14 and attached as

Exhibit A. Mr. Gun respectfully requests two changes to the release order – that his third-party

custodian be changed to his tenant Christopher Graf, who resides at Mr. Gun's Fairfax

residence[1], and that Mr. Gun be allowed to stay at that residence.

Mr. Gun is before this Court charged by Complaint with one count of Unauthorized

Removal and Retention of Classified Material, in violation of 18 U.S.C. § 1924. *See id*, Dkt.

Nos. 1 and 2. The Complaint and Affidavit allege that between May 10, 2024 and continuing

through August 9, 2024, Mr. Gun printed material with visible classification markings at his

workplace, removed them, and stored them as his residence. *Id*. In the early morning hours of

August 9, 2024, Mr. Gun was scheduled to depart to Mexico for a fishing trip with friends when

---

[1] The address has been provided to pretrial services.

1

the FBI executed a search warrant on two of his properties and subsequently arrested and detained him. Mr. Gun had his initial appearance that same day, and a detention hearing was held on August 13, 2024, where Judge Davis ordered his release with pretrial conditions. *See* Exhibit A.

Judge Davis found Mr. Gun is 1) not a flight risk; 2) not a danger to the community; and 3) that there are conditions or combinations thereof that can effectively ensure his appearance in Court and the safety of the community. *Id.* More specifically, Judge Davis told the government, "…it is your job to prove to this Court the facts that support your argument for detention. As of this point in time, you have failed in your task." *See* Exhibit B at 22-23.

## BACKGROUND

Mr. Gun is 50 years old, was born in Turkey, and came to the United States on a work visa in 2001. He obtained lawful permanent resident status in 2012 and proudly became a naturalized United States citizen on July 4, 2021. He has dual citizenship with Turkey, but his Turkish passport is expired. Mr. Gun is an electrical engineer by trade and is currently working towards a Ph. D. at Southern Methodist University in Texas. He is divorced, has no children, and his only sibling, a sister, resided in Sterling, Virginia until her passing two years ago from cancer. His parents live in Turkey, and he regularly visited them throughout the years. Mr. Gun has absolutely no criminal history and has been gainfully employed by various contractors and entities throughout his adult life, most recently as a civilian employee with the Joint Warfare Analysis Center, which supports U.S. Strategic Command's Director of Global Operations. As part of his employment, Mr. Gun underwent an intensive background check and was granted a Top Secret Security Clearance with access to Sensitive Compartmented Information. Mr. Gun owns several properties, one in Texas, one in Florida, and four in Virginia, and has significant

ties to the area. He has many close friends in the area who have all been very supportive throughout this ordeal, and his tenant of fifteen years, Chris Graf, has been approved as a suitable third-party custodian.

**LAW AND ARGUMENT**

Under the Bail Reform Act, 18 U.S.C. § 3141 et seq., a judicial officer "shall order" a defendant's detention before trial if, after a hearing, "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). However, in our society, liberty is the norm, and detention prior to trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Where the government requests pretrial detention, specific requirements must be fulfilled before a defendant may be detained. In order to warrant an exception to this presumption of freedom, the government is required to demonstrate the appropriateness of pretrial detention regarding dangerousness by clear and convincing evidence. 18 U.S.C. § 3142(f)(2)(B). A finding of risk of flight must be supported by a preponderance of the evidence. *See United States v. Stewart*, 2001 WL 1020779, at *2 (4th Cir. 2001).

Additionally, the judicial officer considering the propriety of pretrial detention must consider four factors: (1) [t]he nature and circumstances of the offense charged; (2) the weight of evidence against the person; (3) the history and characteristics of the person, including . . . the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; . . . and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

3

A.  **Nature and Circumstances of the Offense and Weight of the Evidence**

The government argues that the nature and circumstances of the offense warrant detention, and it focuses its argument on the allegation that Mr. Gun engaged in a pattern of printing, removing, and retaining classified materials over the course of several months. *See generally* Case No. 24-mj-325, Dkt. No. 19. It is important to note that the government concedes that Mr. Gun also allegedly printed thousands of pages of *unclassified* material in those same print log sessions, something he was authorized to do. *Id*. at 3. The government concludes without any evidence that these actions were not accidental and were "deliberate and preplanned." *Id*. at 9. Further, the government claims that a backpack found "set against the locked door" at his Falls Church residence contained a classified document and another document detailing Mr. Gun's intelligence credentials. *Id*. The government asks the Court to conclude that this backpack was going to be taken on the trip to Mexico only because it was set against a locked door. The government wants to use this fact to bolster its argumenta as to why Mr. Gun is a flight risk and a danger to the community such that it warrants detention.

However, the government fails to mention that this locked door was located inside an enclosed porch area of the entryway, where other permanent belongings were stored. *See* Exhibit C. The backpack was not near the entry door to the enclosed porch; it was also not near the suitcase, an item clearly intended for travel, that was located outside of the home, in the driveway, near a vehicle. *See id*, Dkt. No. 2, at 10-11. Further, the agents located Mr. Gun's U.S. passport and his expired Turkish passport on his person in a fanny pack, *not* in the backpack.

The government further alleges that Mr. Gun provided false information when interviewed by the FBI, stating that he did not remove any classified material, and that if there were any, it might be "expired." *Id*. at 12. The government provides no evidence that these

statements were demonstrably false and were not in fact a mistake – a defense Mr. Gun could put

forth in this case. Further, there is nothing in the record that indicates Mr. Gun ever actually

disseminated any classified material to anyone. *See* Exhibit B, at 12, 28.

When pressed repeatedly by Judge Davis as to what made this case and defendant

different from any other unauthorized removal and retention case to justify detention, the

government simply had no answer. *See* Exhibit B, 5-7, 28. The Court questioned: "There have

been plenty of people who have been charged with this offense who had classified information

just as significant, if not more significant, and were released pretrial. What, once again, factually,

makes this case so egregious that he should also not be released, especially when a big part of

your argument is danger to the community, and he has no criminal history … and you have no

evidence to present to this Court that he disseminated any classified information or intended to

do so?" *See* Exhibit B, at 28. The government responded by saying they "oppose the simple

characterization given the volume in this case," but again, had no answer. *Id*.  Additionally, even

assuming the weight of the evidence is very strong in this case Judge Davis pointed out that this

is not a rebuttable presumption case. *Id*. at 6.

### B.  History and Characteristics of Mr. Gun

The government argues that Mr. Gun's history and characteristics warrant detention

because he is a flight risk, has means, travels internationally often, and was attempting to leave

the country when he was arrested. *Id*. Mr. Gun was born in Turkey and has been living and

working in the United States since 2001. He became a U.S. citizen three years ago and obtained

his Top Secret Security Clearance a little less than a year ago. He has absolutely no criminal

history, and contrary to the government's assertions that he has no ties to the area, Mr. Gun does

have significant ties to the community. He owns property in Texas and Florida, but also owns

four properties in Virginia. His only sibling, a sister, used to live in Sterling, Virginia, but she

tragically passed away two years ago from cancer. He is divorced and has no children, his

parents live in Turkey, and he has many friends in the Turkish community here. Mr. Gun's U.S.

passport, and expired Turkish passport have already been seized by the FBI, so there is no way

Mr. Gun could even attempt to travel internationally.

Separately, several individuals have been interviewed by pretrial services and deemed to

be suitable third-party custodians. *See* Pretrial Services Report, Dkt. No. 11. At the initial

detention hearing, Judge Davis released Mr. Gun to the custody of his friend Beatriz Yazgan, but

over the past week, circumstances have proved difficult for Ms. Yazgan to fulfill these duties.

Subsequently, Mr. Gun's tenant of fifteen years, Christopher Graf, was approved and is willing

to serve as the third-party custodian. If released, Mr. Gun would reside at his residence in

Fairfax, Virginia, where Mr. Graf also lives as his tenant.

## C. Mr. Gun Is Not a Danger to the Community

The government argues that Mr. Gun poses a grave danger to the community and that

detention is necessary to protect the threat to the public. *Id*. at 14-17. It bases its argument on the

fact that the investigation is ongoing; additional charges *could* be forthcoming, and that Mr. Gun

had a duty to protect classified information and failed to do so. *Id*. The government argues that

simply because Mr. Gun *could* have stored classified material digitally or memorized the

material – that it makes him a danger such that no condition or combination thereof could

reasonably assure the Court as to the safety of the community. *Id*. Under this premise, any

individual with knowledge of any classified information poses a threat and should not be allowed

to leave the country. It offers no evidence that Mr. Gun actually did store any classified material

anywhere else, nor is there evidence he memorized or disseminated anything to anyone. *See*

Exhibit B, at 10-13, 28. Additionally, as Judge Davis stated at the detention hearing, Mr. Gun could still communicate with members of the public from the Alexandria Detention Center and so the government argument fails as to how detention would alleviate this concern. *See* Exhibit B, at 29.

Separately, Mr. Gun does own several firearms, some of which were located at his Falls Church residence and others at his Texas residence. Counsel coordinated the transfer of the weapons to longtime friends of Mr. Gun – Mel Golden (Falls Church) and Dervis Halici (Texas). Attached as Exhibits D and E are the notarized affidavits confirming the transfer. Simply put, Mr. Gun is not a danger to the community, and any concern could be addressed by the conditions set forth in the release order, to include home confinement and electronic monitoring.

## CONCLUSION

In considering the above factors, Mr. Gun is not a flight risk, is not a danger to the community, and there are conditions or combinations thereof that can effectively ensure both his appearance in court and the safety of the community. Mr. Gun respectfully requests that this Court affirm Judge Davis' order releasing him pending trial with all the relevant conditions except for the change in third-party custodian and place of residence.

Respectfully submitted,

_____s/_____
Rammy G. Barbari
VSB # 88414
Price Benowitz LLP
409 Seventh Street, NW, Suite 300
Washington, DC  20004
(202) 870-0139
rammy@pricebenowitz.com

7

**CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of August 2024, a copy of the foregoing Opposition

to Government's Motion to Revoke Release Order was served on all parties via the CM/ECF

system.


_____/s/_____
Rammy G. Barbari